1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10             **SAN JOSE DIVISION**

11

12   ANNA VERDUZCO,                          Case No.  14-cv-02698-BLF

             Plaintiff,

13

     v.                                       **ORDER GRANTING PLAINTIFF'S**
14                                            **MOTION FOR SUMMARY**
                                              **JUDGMENT; DENYING**
15   CAROLYN COLVIN, Commissioner of          **DEFENDANT'S MOTION FOR**
     Social Security,                         **SUMMARY JUDGMENT; AND**
16                                            **REMANDING FOR FURTHER**
             Defendant.                       **PROCEEDINGS**
17
                                              [Re:  ECF 11, 12]
18

19

20          Plaintiff Anna Verduzco appeals a final decision of the Commissioner of Social Security

21   denying her application for a period of disability and disability insurance benefits under Title II of

22   the Social Security Act.  Before the Court are the parties' cross-motions for summary judgment,

23   which have been fully briefed.  Upon consideration of the briefing[1] and for the reasons set forth

24   below, the Court GRANTS Plaintiff's motion, DENIES the Commissioner's motion, and

25   REMANDS for further proceedings consistent with this order.

26

27

28   _____

     [1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

## I.     BACKGROUND

Plaintiff, a United States citizen, was born on December 14, 1965.   Admin. R. ("AR") 106.  She completed the twelfth grade and most recently worked as an apartment manager.  AR 126.  She also has past relevant work as a driver.  *Id.*  She is married and has six children ranging from grade school age to adult.  AR 32.

### Acute Right Hip Pain and Right Hip Replacement (March 2010 – June 2010)

On March 21, 2010, Plaintiff went to the O'Connor Hospital Emergency Department because she was experiencing pain in her right hip that was so bad that she could not walk.  AR 199-202.  Plaintiff had been experiencing pain in her right hip for approximately five years, since the birth of one of her children, but on the day of the Emergency Department visit the pain had worsened to the point where her right leg would not bear weight.  *Id.*  Plaintiff was diagnosed with acute exacerbation of chronic right hip pain.  *Id.*

Plaintiff was referred to orthopedic surgeon Dr. Bruce Huffer.  AR 232.  Dr. Huffer saw Plaintiff for an orthopedic consultation on April 7, 2010 – Plaintiff's asserted disability onset date – at which time he observed limited motion of the right hip, as well as pain and tenderness in the hip and groin area.  *Id.*  Dr. Huffer ordered an MRI, which revealed significant arthritic changes and small cysts about the hip joint.  AR 233.  Dr. Huffer performed a total replacement of Plaintiff's right hip on June 24, 2010.  AR 245-47, 304.

### Hip and Back Pain Following Right Hip Replacement (July 2010 – March 2011)

Plaintiff followed up with Dr. Huffer from July 2010 through February 2011.  AR 235-44.  Plaintiff recovered well from the surgery, but starting in September 2010 she developed pain in the right buttock area.  AR 239-44.  Dr. Huffer ordered x-rays for Plaintiff's right hip, which he reviewed in December 2010, but he did not observe anything abnormal that would explain Plaintiff's symptoms.  AR 241-42.

In January 2011, Plaintiff was seen at O'Connor Hospital Emergency Department for pain.  AR 243.  After speaking with Plaintiff's husband on the telephone regarding that Emergency Department visit, Dr. Huffer concluded that Plaintiff should see either an orthopedic surgeon, specifically a subspecialist for the hip or back area, or a pain management physician.  AR 243.  Dr.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Huffer ended up referring Plaintiff to both Dr. Morteza Farr, D.O., a board certified orthopedic

2   surgeon/fellowship trained spinal surgeon, and Dr. Tuyen Ngo, M.D.  AR 252, 254.

3       Dr. Farr saw Plaintiff on January 31, 2011 for an evaluation.  AR 314-16.  Dr. Farr noted

4   that a prior x-ray of the right hip showed the prosthesis with excellent alignment.  AR 314.

5   However, Plaintiff was walking with a cane and complaining of severe pain.  AR 314-15.  Dr. Farr

6   determined that an MRI of the lumbar was appropriate.  AR 315.  Dr. Huffer reviewed the MRI

7   and observed that it revealed "multi-level degenerative disc disease, but especially at L5-S1,"

8   "spondylolisthesis of L5 on S1 with bilateral pars fractures," and resulting "fairly significant

9   neural impingement right and left sided."  AR 244.  Dr. Huffer met with Plaintiff and explained

10  those results to her using a back model.  *Id.*  Dr. Huffer concluded that "[c]ertainly the MRI

11  findings may explain not only the symptoms into the right buttock hip area but also of course the

12  back symptoms."  *Id.*  Dr. Huffer recommended that Plaintiff continue to follow with Dr. Farr and

13  Dr. Ngo.  *Id.*

14      Plaintiff saw Dr. Farr for a follow-up evaluation on March 25, 2011.  At that time, Plaintiff

15  was still walking with a cane.  AR 341.  Dr. Farr stated that Plaintiff had multiple problems with

16  her back, including "degenerative disc at L5-S1 with pars defect and severe neuroforaminal

17  stenosis," which Dr. Farr opined "could be contributing to some of the pain that she has in her

18  back and hip area."  *Id.*  Dr. Farr explained to Plaintiff that it was unclear whether her back issues

19  could be resolved by surgery.  AR 342.  Dr. Farr recommended that Plaintiff try a transforaminal

20  epidural injection at L5 bilaterally, and indicated that if the injection gave Plaintiff significant

21  relief, that would be a good indicator that surgery would be effective.  *Id.*

22      **Application for Social Security Benefits (April 14, 2011)**

23      On April 14, 2011, Plaintiff filed an application for a period of disability and disability

24  insurance benefits as well as an application for supplemental security income.  AR 106-117.  In

25  both applications, Plaintiff claimed disability as of April 7, 2010 – the date of her initial

26  consultation with Dr. Huffer –  due to hip and spine pain.  AR 106-17, 125.

27      **Continuing Pain, RFCs, and Back Surgery (April 2011 – August 2011)**

28      Plaintiff pursued the injection that Dr. Huffer had recommended through the Stanford

United States District Court
Northern District of California

1    University Pain Management Clinic, where she was seen on April 27, 2011.  AR 344-47.  Dr. Farr

2    saw Plaintiff for a follow-up on June 10, 2011.  AR 366-67.  Dr. Farr observed that Plaintiff had

3    done well after the injection, but that "the pain has come back as expected," and that Plaintiff was

4    walking with a cane.  *Id.*  Because Plaintiff had done well with the injection, Dr. Farr

5    recommended back surgery.  AR 367.

6            On June 23, 2011, Dr. Sadda Reddy, MD, a non-examining medical consultant retained by

7    the Social Security Administration, completed a Physical Residual Functional Capacity

8    assessment ("RFC assessment") and an accompanying narrative case analysis.  AR 354-62.  Dr.

9    Reddy reviewed Plaintiff's medical records but did not meet or examine Plaintiff.  *Id.*  Dr. Reddy

10   checked the boxes on the RFC assessment indicating that Plaintiff could "frequently lift and/or

11   carry" 10 pound items; stand and/or walk for a total of at least two hours in an eight hour

12   workday, with use of a medically required hand-held assistive device; sit for a total of about six

13   hours in an eight hour workday, with alternation between sitting and standing every thirty minutes

14   to relieve pain and discomfort; and occasionally climb, balance, stoop, kneel, crouch, and crawl.

15   AR 355-57.  Dr. Reddy concluded that based upon those limitations "a sedentary RFC with

16   postural limitations is most appropriate."  AR 356.  In his narrative case analysis accompanying

17   the RFC questionnaire, under the heading "INCONSISTENCIES WITHIN/BETWEEN

18   REPORTS AND ALLEGATIONS," Dr. Reddy wrote as follows:

19           CREDIBILITY
             Not fully credible
20

21   AR 361.  Dr. Reddy did not cite to the record or write anything else to explain or support that

22   credibility determination.  *Id.*

23           On August 17, 2011, Dr. Farr, Plaintiff's treating physician, also completed a Physical

24   Residual Functional Capacity assessment.  AR 600-04.  Dr. Farr indicated that Plaintiff could

25   stand for about two hours in an eight hour work day and sit about four hours in an eight hour work

26   day.  AR 602.  Dr. Farr also opined that Plaintiff would "often" need five to ten minute

27   unscheduled breaks; would need to be able to shift at will from sitting, standing, or walking; and

28   that while standing or walking she must use a cane or other assistive device "if she desire[s]."  *Id.*

1  In Dr. Farr's opinion, Plaintiff could never lift or carry 10 pounds or more in a work situation and

2  rarely (1%-5% of a working day) lift less than 10 pounds.  AR 603.  Dr. Farr opined that Plaintiff

3  had no limitation with reaching, handling or fingering with her hands, fingers and arms; could

4  frequently (34%-66% of the working day) turn her head right or left, and could look up; could

5  rarely twist her body, stoop, crouch, or climb stairs; and could never climb ladders.  *Id.*  Dr. Farr

6  stated that Plaintiff was not a malingerer and that her impairments could be expected to last at

7  least twelve months.  AR 601.  Based upon those impairments, Dr. Farr indicated that Plaintiff

8  was incapable of even low stress jobs.  *Id.*

9  On August 24, 2011, Plaintiff was admitted to O'Connor Hospital where Dr. Farr

10  performed back surgery, specifically, a complete laminectomy, interbody fusion, and a

11  posterolateral fusion for instrumentation at L5-S1.  AR 391.

12  **Continuing Pain Following Back Surgery (October 2011 – May 2012)**

13  On October 11, 2011, Dr. Farr performed a follow-up evaluation of Plaintiff, noting that

14  Plaintiff's back was "doing well" and that her right hip pain had been "resolved," but that Plaintiff

15  had "significant pain in the left hip."  AR 506.  Plaintiff was able to walk without a cane at both

16  the October 11, 2011 appointment and at a later March 20, 2012 appointment.  AR 506, 648.

17  However, Plaintiff continued to report "persistent pain in the hip as well as some pain in the

18  lumbar area with some pain in the buttock."  AR. 648.  Dr. Farr observed that Plaintiff had been

19  put "on the list" for a hip injection by Valley Medical Center.  *Id.*

20  On November 16, 2011, Dr. Ernest Wong, a non-examining medical consultant retained by

21  the Social Security Administration, completed a narrative case analysis.  AR 582-83.  Dr. Wong

22  did not meet or examine Plaintiff.  *Id.*  Dr. Wong briefly summarized the record evidence, stating

23  that Plaintiff had a history of right hip replacement and back pain but that she continued to

24  complain about left hip pain.  AR 582.  Although Dr. Wong indicated "None" with respect to

25  "INCONSISTENCIES WITHIN/BETWEEN REPORTS AND ALLEGATIONS," he concluded

26  that Plaintiff was "[l]ess than fully credible."  AR 582-83.  Like Dr. Reddy, Dr. Wong did not cite

27  any record evidence or other support for that credibility assessment.  *Id.*

28  On May 15, 2012, Plaintiff was seen at the Stanford Physical Medicine and Rehabilitation

United States District Court
Northern District of California

Interventional Spine Center.  AR 645-47.  Plaintiff reported severe pain in the left hip which had gotten worse over time.  AR 645.  Plaintiff was taking medication for the pain, including hydrocodone and benazepril, which resulted in mild-to-moderate relief of her symptoms.  *Id.*  The Stanford physicians reviewed an MRI of Plaintiff's left hip dated November 8, 2011, which "showed cystic changes and osteophytes consistent with osteoarthritis."  AR 646.  The physicians found that "[t]his condition is complicated by excessive weight, L1-L5 lumbar fusion, and right hip replacement."  *Id.*  The Stanford physicians documented their impression of "[h]istory and physical examination consistent with left hip joint pain," and indicated that Plaintiff was experiencing "progressively worsening left groin and buttock pain," but stated that Plaintiff wanted to hold off on left hip replacement.  *Id.*  The physicians prescribed left hip joint injection with a follow-up for further workup and possible surgical intervention.  *Id.*

### Denial of Benefits (October 2012 – April 2014)

Plaintiff was denied benefits initially and upon reconsideration.  AR 52-60, 65-70.  She requested a hearing before an administrative law judge ("ALJ"), which was scheduled for October 11, 2012, in San Jose, California.  AR 72, 99.

On September 14, 2012, prior to the hearing, Dr. Farr wrote a letter regarding Plaintiff's progress since Dr. Farr's completion of the prior August 2011 RFC assessment.  AR 628.  Dr. Farr stated that Plaintiff's symptoms had not changed.  *Id.*  Dr. Farr noted that the source of Plaintiff's pain had not been identified; an injection in the hip area had not relieved Plaintiff's symptoms; one possibility was that a pedicle screw used during the back surgery might be pressing on a nerve; and a CT had been ordered to see if that was the case.  *Id.*

The hearing before the ALJ occurred as scheduled on October 11, 2012.  AR 28-51.  At the hearing, the ALJ heard testimony from Plaintiff and from a vocational expert ("VE").  On October 19, 2012, the ALJ issued a written decision concluding that Plaintiff is not disabled and thus is not entitled to benefits.  AR 14-22.  The ALJ's decision was affirmed by the Appeals Council on April 8, 2014, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1.  Plaintiff now seeks judicial review of the denial of benefits.

## II.   LEGAL STANDARD

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.   Standard of Review

District courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, --- F.3d ----, 2015 WL 4620123, at *4 (9th Cir. Aug. 4, 2015). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (internal quotation marks and citation omitted).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Id.* (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Commissioner*, --- F.3d ----, 2015 WL 4620150, at *3 (9th Cir. Aug. 4, 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *Brown-Hunter*, 2015 WL 4620123, at *4. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

### B.   Standard for Determining Disability

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

1    423(d)(1)(A).

2          "To determine whether a claimant is disabled, an ALJ is required to employ a five-step

3    sequential analysis, determining:  (1) whether the claimant is doing substantial gainful activity;

4    (2) whether the claimant has a severe medically determinable physical or mental impairment or

5    combination of impairments that has lasted for more than 12 months; (3) whether the impairment

6    meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual

7    functional capacity, the claimant can still do his or her past relevant work; and (5) whether the

8    claimant can make an adjustment to other work."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th

9    Cir. 2014) (internal quotation marks and citations omitted).  The residual functional capacity, or

10   RFC, referenced at step four is what a claimant can still do despite his or her limitations.  *Id.* at

11   1160 n.5.  "The burden of proof is on the claimant at steps one through four, but shifts to the

12   Commissioner at step five."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir.

13   2009).

## III.   DISCUSSION

15         The ALJ determined that Plaintiff had acquired sufficient quarters of coverage to remain

16   insured through June 30, 2012.  AR 14.  At step one, the ALJ determined that Plaintiff had not

17   engaged in substantial gainful activity since her alleged onset date of April 7, 2010.  AR 16.  At

18   step two, the ALJ found that Plaintiff had a severe combination of impairments consisting of

19   "osteoarthritis of the right hip, status post right total hip arthroplasty; degenerative disc disease of

20   the lumbar spine, status post lumbar fusion; and obesity."  *Id.*  At step three, the ALJ concluded

21   that Plaintiff's impairments did not meet or medically equal the severity of one of the listed

22   impairments in the regulations.  *Id.*

23         Prior to making his step four determination, the ALJ found that Plaintiff has the RFC to

24   perform sedentary work with the following restrictions:

25         She can lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds
           frequently; stand and walk for at least two hours in an eight-hour workday, and sit
26         for about six hours in an eight-hour workday, with normal rest periods.  The
           claimant must use a medically required hand-held assistive device for prolonged
27         ambulation over uneven terrain.  She can occasionally climb ramps and stairs, as
           well as balance, stoop, kneel, crouch, and crawl, but can never climb ladders, rope
28         and scaffolds.  She has no manipulative limitations but must avoid concentrated

United States District Court
Northern District of California

exposure to hazards, such as heights and dangerous machinery.

AR 17.  In making that finding, the ALJ discounted the RFC assessment of Plaintiff's treating physician, Dr. Farr, and instead credited the RFC assessment of the Social Security Administration's non-examining consultant, Dr. Reddy.  AR 19-20.  The ALJ also found that there was "some question" as to Plaintiff's credibility with regard to the issue of her functional limitations.  AR 18.

At step four, the ALJ concluded that based upon this RFC, Plaintiff could not perform her past relevant work.  AR 20.  However, at step five, the ALJ concluded that Plaintiff could do jobs that existed in significant numbers in the national economy.  AR 21.  The ALJ reached his step five determination based upon a hypothetical posed to the VE which assumed an individual of Plaintiff's age, education, and work experience, with the above RFC.  AR 21-22.

Plaintiff challenges the ALJ's step five determination, asserting that in making his RFC finding the ALJ failed to give sufficient reasons, supported by the record, for discounting Dr. Farr's opinion and her own subjective pain complaints.  Plaintiff points out that when her attorney posed a hypothetical to the VE which assumed an individual of Plaintiff's age, education, and work experience with the RFC as to which Dr. Farr opined, the VE stated that such an individual "could not perform past work or any competitive work."  AR 49.

Plaintiff also challenges the ALJ's step three determination that her impairments do not meet or equal the severity of one of the listed impairments in the regulations.  While normally the Court would address the ALJ's step three determination before his step five determination, the parties have presented those issues in reverse order.  The Court addresses the issues in the order presented by the parties.

A.    **The ALJ did not give Specific and Legitimate Reasons, Supported by Substantial Evidence, for Discounting the Opinion of Plaintiff's Treating Physician, Dr. Farr**

As discussed above, Plaintiff's treating physician, Dr. Farr, completed an RFC assessment on August 17, 2011 concluding that Plaintiff had significant physical limitations that would preclude her from working.  AR 600-04.  That RFC assessment was completed prior to Plaintiff's

United States District Court
Northern District of California

1   back surgery, but Dr. Farr's subsequent treatment records document Plaintiff's continuing back

2   and hip issues after her back surgery.  AR 648.  In September 2012, shortly before the

3   administrative hearing, Dr. Farr wrote a letter regarding Plaintiff's progress since the August 2011

4   RFC assessment, stating that her symptoms had "not changed."  *Id.*  The ALJ gave "little weight"

5   to Dr. Farr's opinion and instead credited the opinions of the non-examining physicians retained

6   by the Social Security Administration, Drs. Reddy and Wong.[2]  AR 19-20.

7          "Generally, the opinion of a treating physician must be given more weight than the opinion

8   of an examining physician, and the opinion of an examining physician must be afforded more

9   weight than the opinion of a reviewing physician."  *Ghanim*, 763 F.3d at 1160.  "If a treating

10  physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic

11  techniques and is not inconsistent with the other substantial evidence in the case record, it will be

12  given controlling weight."  *Id.* (internal quotation marks, citation, and brackets omitted).  If the

13  treating physician's opinion is contradicted by the opinion of another physician, the ALJ may

14  reject the treating physician's opinion but only based upon "specific and legitimate reasons that

15  are supported by substantial evidence."  *Id.* (internal quotation marks and citation omitted).   In

16  determining how much weight to give a treating physician's opinion, the ALJ must consider the

17  following factors:  the length of the treatment relationship and the frequency of examination by the

18  treating physician, the nature and extent of the treatment relationship between the patient and the

19  treating physician, the supportability of the physician's opinion with medical evidence, and the

20  consistency of the physician's opinion with the record as a whole."  *Id.* (internal quotation marks,

21  citation, and brackets omitted).  "In many cases, a treating source's medical opinion will be

22  entitled to the greatest weight and should be adopted, even if it does not meet the test for

23  controlling weight."  *Id.* (internal quotation marks and citation omitted).

24          In this case, Dr. Farr's opinion is contradicted by the opinions of Drs. Reddy and Wong.

25  _____

26  [2] While the ALJ's written decision does not mention Dr. Wong by name, the decision states
    expressly that the ALJ gave "significant weight" to the opinions of the state agency medical

27  consultants, which appeared in the administrative record as Exhibits 7F, 8F, and 15F.  AR 20.
    Exhibit 7F is Dr. Reddy's RFC assessment, Exhibit 8F is Dr. Reddy's narrative case analysis, and

28  Exhibit 15F is Dr. Wong's narrative case analysis.  Thus the ALJ clearly relied upon the opinions
    of both Dr. Reddy and Dr. Wong.

United States District Court
Northern District of California

1    Thus on review this Court's task is to determine whether the ALJ provided "specific and

2    legitimate reasons that are supported by substantial evidence" for rejecting Dr. Farr's opinion.

3    The ALJ gave the following reasons for discounting Dr. Farr's opinion:  "This opinion is based

4    largely on the claimant's subjective complaints and fails to comport with the relevant medical

5    evidence of record, including the longitudinal records from orthopedic surgeon Dr. Huffer

6    (Exhibits 3F, 4F, and 12F)."  AR 19.  The Court addresses those two reasons in turn, as well as the

7    ALJ's stated reasons for crediting the opinions of Drs. Reddy and Wong.

8                                1.        **Pain Complaints**

9             "If a treating provider's opinions are based to a large extent on an applicant's self-reports

10   and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount

11   the treating provider's opinion."  *Ghanim*, 763 F.3d at 1162.  (internal quotation marks and

12   citation omitted).  "However, when an opinion is not more heavily based on a patient's self-reports

13   than on clinical observations, there is no evidentiary basis for rejecting the opinion."  *Id.*

14           While the entire body of Dr. Farr's treatment records from January 31, 2011 through

15   September 2012 includes objective test results and clinical observations, the August 2011 RFC

16   assessment did indicate that the limitations stated therein were due to "sever [sic] pain."  AR 601.

17   Similarly, Dr. Farr's September 2012 progress letter, stating that Plaintiff's symptoms remained

18   unchanged, indicated that her doctors had not been able to find a source for her pain.[3]  AR 628.

19   Because Dr. Farr necessarily must have relied upon Plaintiff's self-reports as to the level of her

20   pain, particularly with respect to the September 2012 opinion noting that the source of Plaintiff's

21   pain was unknown, the ALJ properly could have rejected Dr. Farr's opinion based upon an

22   appropriate adverse credibility finding with respect to Plaintiff.  However, as discussed in section

23   III.B below, the ALJ failed to provide the required specific, clear and convincing reasons for the

24   adverse credibility determination.  Thus, the ALJ's rejection of Dr. Farr's opinion on that basis is

25   not supported.

26

27   _____

28   [3] The ALJ apparently did not consider Dr. Farr's September 2012 progress letter, which was
     submitted shortly before the administrative hearing, as the ALJ's decision refers only to the earlier
     August 2011 RFC assessment.

United States District Court
Northern District of California

1

2     **2.**     **Dr. Huffer's Records**

3     In rejecting Dr. Farr's opinion as inconsistent with Dr. Huffer's records, the ALJ cited

4 generally to Exhibits 3F, 4F, and 12F, which comprise more than 120 pages of medical records.

5 AR 19, 231-97, 446-504.  While a federal court "will not fault the agency merely for explaining its

6 decision with less than ideal clarity," the agency still must "set forth the reasoning behind its

7 decisions in a way that allows for meaningful review." *Brown-Hunter*, 2015 WL 4620123, at *4.

8 The Ninth Circuit recently has emphasized that "[a] clear statement of the agency's reasoning is

9 necessary because we can affirm the agency's decision to deny benefits only on the grounds

10 invoked by the agency." *Id.*  Because the ALJ did not specify *which* of the 120 pages of cited

11 medical records he believed to be inconsistent with Dr. Farr's opinion, this Court cannot

12 meaningfully review the ALJ's determination on that point.  Accordingly, the Court concludes that

13 the ALJ did not articulate specific and legitimate reasons, supported by substantial evidence, for

14 rejecting Dr. Farr's opinion.

15     The Commissioner argues that substantial evidence supported the ALJ's rejection of Dr.

16 Farr's opinion, arguing that an ALJ may discount a treating physician's opinion that is in the form

17 of a checklist; that Dr. Farr's RFC assessment was internally inconsistent because it stated that

18 Plaintiff needed to use a cane *if she desires* instead of stating whether or not use of the cane was

19 medically necessary; and that Dr. Farr's statement that he did not know the cause of Plaintiff's

20 pain constituted an admission that Plaintiff's reported pain is not supported by objective evidence.

21 Def.'s Mot. at 11-12, ECF 12.  The Commissioner's argument ignores the fact that *the ALJ* did not

22 cite any of those reasons for rejecting Dr. Farr's opinion.  This Court may not make independent

23 findings based upon record evidence to bolster the ALJ's decision.  *Brown-Hunter*, 2015 WL

24 4620123, at *4.  The Court is "constrained to review the reasons the ALJ asserts." *Id.*

25     **3.**     **Drs. Reddy and Wong**

26     The ALJ credited the opinions of the non-examining agency physicians, Drs. Reddy and

27 Wong, finding that those opinions were "consistent with the relevant medical evidence of record,

28 including longitudinal records from Dr. Huffer at Exhibits 3F, 4F, and 12F." AR 20.  The ALJ

stated that "[f]or this reason, I have adopted the residual functional capacity set forth by state

agency medical consultant Sadda Reddy, M.D., in his physical residual functional capacity assessment of June 23, 2011." *Id.* The ALJ's general statement that the opinions of Drs. Reddy and Wong were consistent with Dr. Huffer's records, which comprise more than 120 pages of medical records, is not specific enough to provide for any meaningful review and accordingly does not provide an adequate basis for rejecting the opinion of Dr. Farr. *See Brown-Hunter*, 2015 WL 4620123, at *4.

### 4. Conclusion

Accordingly, the Court concludes that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting the opinion of Plaintiff's treating physician, Dr. Farr, in favor of the opinions of Drs. Reddy and Wong.

### B. The ALJ did not give Clear and Convincing Reasons for his Adverse Credibility Determination Regarding Plaintiff

Plaintiff testified at the administrative hearing that she has pain in her mid-back, lower back, at both hips, at both buttocks, and in her left knee. AR 40. She stated that she did not have any back problems until her right hip replacement surgery, but after that surgery her back started hurting. AR 43. She then had back surgery, which she characterized as a "failed surgery," and stated that the doctors were thinking of removing the screws from her lower back. *Id.* Plaintiff indicated that she was open to having another surgery to remove the screws if it would relieve her pain, which she stated was a seven on a scale of one to ten. *Id.* She testified that she has been using a cane, which was given to her by a medical provider, since before her right hip surgery in June 2010. AR 41. She uses the cane all the time, inside and outside of the house. *Id.*

Plaintiff testified that she can stand for about five minutes at a time and sit for about twenty minutes at a time, and that normally she spends much of her day lying down. AR 42. She does not think that she could sit for more than two hours total in an eight hour workday, and she does not think that she could stand or walk more than one hour total in an eight hour workday. AR 45. Plaintiff no longer drives, although she did drive before her medical problems started. *Id.*

The ALJ concluded that there was "some question as to the claimant's credibility with regard to the issue of her alleged functional limitations." AR 18. "In assessing the credibility of a

13

1   claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a

2   two-step analysis." *Ghanim*, 763 F.3d at 1163 (internal quotation marks and citation omitted).

3   "First, the ALJ must determine whether the claimant has presented objective medical evidence of

4   an underlying impairment which could reasonably be expected to produce the pain or other

5   symptoms alleged." *Id.* (internal quotation marks and citation omitted).  "If the claimant meets the

6   first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony

7   about the severity of the symptoms if she gives specific, clear and convincing reasons for the

8   rejection."[4] *Id.* (internal quotation marks and citation omitted).  "General findings are insufficient;

9   rather, the ALJ must identify what testimony is not credible and what evidence undermines the

10  claimant's complaints." *Id.* (internal quotation marks and citation omitted).

11          At the first step of the credibility analysis, the ALJ concluded that Plaintiff presented

12  evidence of medically determinable impairments that reasonably could be expected to cause the

13  alleged symptoms.  AR 18.  However, at the second step of the analysis the ALJ found that

14  Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these

15  symptoms are not credible to the extent they are inconsistent with" the RFC determined by the

16  ALJ.  *Id.*  The ALJ made no finding of malingering.  *Id.*  Under the standards articulated above,

17  the ALJ's adverse credibility determination may be upheld only if he has given "specific, clear and

18  convincing reasons," supported by identification of specific evidence in the record, for the

19  determination.

20          The first reason given by the ALJ for his adverse credibility determination is the existence

21  of "various inconsistencies in the record."  AR 18.  That reason does not meet the "clear and

22  convincing" standard.  The Ninth Circuit has held that "[g]eneral findings are insufficient; rather,

23  the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

24  complaints."  *Brown-Hunter*, 2015 WL 4620123, at *5 (internal quotation marks and citation

---

[4] The Commissioner disputes application of the "clear and convincing reasons" standard in this case, arguing that the ALJ need give only "sufficiently specific" reasons why the claimant's credibility is discounted.  *See* Def.'s Opp. at 13-14.  The Ninth Circuit has rejected that argument. *See Brown-Hunter*, 2015 WL 4620123, at *5.

United States District Court
Northern District of California

1   omitted).

2        The ALJ next stated that Plaintiff's claims regarding the extent and effect of her pain were

3   "contradicted by the claimant's testimony that she acts as the primary caregiver for one or more

4   minor children and can perform some activities of daily living, such as grocery shopping, with

5   assistance from her adult daughter and sister-in-law."  AR 18 (citing Audio Hearing).  The ALJ

6   opined that "[a]ctivity at this level is inconsistent with the claimant's allegations regarding her

7   functional limitations and corresponding ability to work."  *Id.*  "Engaging in daily activities that

8   are incompatible with the severity of symptoms alleged can support an adverse credibility

9   determination."  *Ghanim*, 763 F.3d at 1165.  However, in implying that Plaintiff could perform the

10  physical tasks normally attendant upon parenthood, and stating that Plaintiff could perform daily

11  activities of living such as grocery shopping, it appears that the ALJ misconstrued Plaintiff's

12  testimony.  Plaintiff's testimony was as follows:

13      Q   All right.  And, how do you get things done for your children at home?
14          How does that get done with the impairments and limits you just described?

15      A   Well, my daughter, my 26-year-old, she helps a lot.  My sister-in-law and
16          my friend, they help a lot.  My daughter helps with the cooking and my
            sister-in-law and my daughters will go grocery shopping for the home.

17      Q   And how long has that been that they've been assisting you like that for
            your household?

18      A.  Since shortly before my back surgery.

19      Q   Okay.  So after the hip surgery you were able to go grocery shopping?

20      A   I was able to do a little bit more, well, a lot more than now.

21      Q   Okay.  But did you still have people helping you?

22      A   Yes, I did.

23      Q   Okay.  Do you go to any of those parent child meetings at the school?

24      A   No, I haven't been able to.

25      Q   Since when?

26      A   Since before my back surgery.

27  AR 44.

28        Plaintiff's testimony does not suggest that she can perform physical tasks in connection

United States District Court
Northern District of California

1    with caring for her children.  To the contrary, she testified that she has needed significant help to

2    perform even basic tasks both before and after her back surgery, and that even before her back

3    surgery she was unable to attend meetings at her children's schools.  Notably, Plaintiff did not

4    testify that she can perform tasks like grocery shopping.  She testified that *her sister-in-law and*

5    *daughters* do the grocery shopping for the home.  It is unclear from Plaintiffs' testimony whether

6    she was able to do grocery shopping before her back surgery.

7          Dr. Reddy's narrative case analysis, which pre-dated Plaintiff's back surgery, stated that

8    Plaintiff could "do dishes, fold clothes and cook."  AR 362.  It may be that the ALJ intended to

9    rely upon Dr. Reddy's statement regarding Plaintiff's ability to do activities of daily living but

10   erroneously attributed the source of that belief to Plaintiff's testimony.  However, even if the ALJ

11   had cited to Dr. Reddy's statement, there is no indication in Dr. Reddy's narrative what records

12   formed the basis for the statement about Plaintiff's ability to do dishes, fold clothes, and cook.

13   Interestingly, Dr. Reddy did *not* state that Plaintiff could do grocery shopping, which the ALJ

14   cited as the activity of daily living that calls Plaintiff's credibility into question.  Accordingly, the

15   ALJ's citation to Plaintiff's testimony does not constitute a clear and convincing reason, supported

16   by substantial evidence, for the adverse credibility determination.

17         Finally, the ALJ stated that "considering the claimant's medical records as a whole, her

18   testimony concerning her alleged functional limitations, and the opinion evidence, I conclude the

19   claimant's subjective complaints and alleged limitations are not fully persuasive."  AR 20.  As

20   noted above, this type of general reference to the record does not constitute a specific, clear and

21   convincing reason for discounting a claimant's subjective pain complaints.  *Brown-Hunter*, 2015

22   WL 4620123, at *5.

23         The ALJ gave no other reasons for discounting Plaintiff's claims regarding the severity of

24   her pain.  Accordingly, the ALJ's adverse credibility determination constituted legal error.  *See*

25   *Brown-Hunter*, 2015 WL 4620123, at *6 ("Because the ALJ failed to identify the testimony she

26   found not credible, she did not link that testimony to the particular parts of the record supporting

27   her non-credibility determination.  This was legal error.").

28         **C.    The ALJ's Step Three Determination That Plaintiff's Impairments do**

                                                    16

United States District Court
Northern District of California

1    **not Meet or Equal the Severity of a Listed Impairment**

2         At step three, the ALJ determined that Plaintiff's impairments do not "medically meet or

3    equal the severity requirements of listings 1.02 (major dysfunction of a joint(s) (due to any cause),

4    1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), or 1.04

5    (disorders of the spine), as described in the Listing of Impairments at 20 C.F.R., Part 404, subpart

6    P, appendix 1." AR 17.  The ALJ did not provide any reasons for that conclusion.  Plaintiff

7    challenges the ALJ's determination that her impairments do not meet or equal listing 1.03, which

8    reads as follows:

9         **Reconstructive surgery or surgical arthrodesis of a major weight-bearing**
          **joint**, with inability to ambulate effectively, as defined in 1.00B2b, and return to
10        effective ambulation did not occur, or is not expected to occur, within 12 months of
          onset.
11

12   20 C.F.R., Pt. 404, Subpart P, App. 1, § 1.03.  Listing 1.00B2b in turn provides as follows:

13        Definition.  Inability to ambulate effectively means an extreme limitation of the
          ability to walk; i.e., an impairment(s) that interferes very seriously with the
14        individual's ability to independently initiate, sustain, or complete activities.
          Ineffective ambulation is defined generally as having insufficient lower extremity
15        functioning (*see* 1.00J) to permit independent ambulation without the use of a
          hand-held assistive device(s) that limits the functioning of both upper extremities.
16        (Listing 1.05C is an exception to this general definition because the individual has
          the use of only one upper extremity due to amputation of a hand.)
17

18        To ambulate effectively, individuals must be capable of sustaining a reasonable
          walking pace over a sufficient distance to be able to carry out activities of daily
19        living.  They must have the ability to travel without companion assistance to and
          from a place of employment or school.  Therefore, examples of ineffective
20        ambulation include, but are not limited to, the inability to walk without the use of a
          walker, two crutches or two canes, the inability to walk a block at a reasonable pace
21        on rough or uneven surfaces, the inability to use standard public transportation, the
          inability to carry out routine ambulatory activities, such as shopping and banking,
22        and the inability to climb a few steps at a reasonable pace with the use of a single
          hand rail.  The ability to walk independently about one's home without the use of
23        assistive devices does not, in and of itself, constitute effective ambulation.

24   20 C.F.R., Pt. 404, Subpart P, App. 1, § 1.00B2.

25        Plaintiff argues that she has had reconstructive surgery on a major weight-bearing joint and

26   that even the ALJ's RFC concedes that Plaintiff cannot ambulate effectively, as it states that

27   Plaintiff needs to use an assistive device "for prolonged ambulation over uneven terrain."  AR 17.

28   Based upon the RFC determined by the ALJ, it appears that Plaintiff's impairments may meet or

United States District Court
Northern District of California

1   equal listing 1.03.  Because the ALJ did not give any reasons for his contrary finding, the Court

2   cannot evaluate his decision on that point.  The Court notes that it is not clear from the record

3   whether the inability to ambulate effectively has lasted or is expected to last at least twelve months

4   from onset.  Dr. Farr's treatment notes indicated that Plaintiff was able to walk without a cane at

5   an October 11, 2011 appointment and a March 20, 2012 appointment.  AR 506, 648.

6          The Court concludes that the ALJ failed to provide specific reasons, supported by

7   substantial evidence in the record, to support his step three determination.

8          **D.      Remand for Further Proceedings**

9          Having concluded that the ALJ committed the errors discussed above, the Court must

10  decide on an appropriate remedy.[5]  Plaintiff requests that the case be remanded to the

11  Commissioner for an immediate award of benefits.  The Commissioner requests that any remand

12  be for further proceedings.

13         A remand for an immediate award of benefits may be appropriate in the "rare

14  circumstances" in which the following three requirements are met:  (1) "the ALJ has failed to

15  provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical

16  opinion"; (2) "the record has been fully developed and further administrative proceedings would

17  serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the

18  ALJ would be required to find the claimant disabled on remand."  *Brown-Hunter*, 2015 WL

19  4620123, at *7 (internal quotation marks and citation omitted).  Even if all three requirements are

20  satisfied, the Court "retain[s] flexibility in determining the appropriate remedy."  *Id.* (internal

21  quotation marks and citation omitted).  The Court "may remand on an open record for further

22  proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact,

23  disabled within the meaning of the Social Security Act."  *Id.* (internal quotation marks and citation

24  omitted).

25         The Ninth-Circuit's discussion of these factors in *Brown-Hunter*, a case similar to this one

26

27  —————————————————
    [5] The Commissioner does not argue, nor could the Court find, that the ALJ's errors in this case
28  were harmless.  *See Brown-Hunter*, 2015 WL 4620123, at *4 (holding that even when the ALJ
    commits legal error, the court may uphold the ALJ's decision if the error was harmless).

United States District Court
Northern District of California

1   in many respects, is instructive.  The claimant, Brown-Hunter, provided medical evidence that she

2   suffered from a number of medical conditions, including (like Plaintiff in the present case) lumbar

3   degenerative disc disease and obesity.  *Brown-Hunter*, 2015 WL 4620123, at *1.  At the

4   administrative hearing, Brown-Hunter testified that she suffered severe back and leg pain and

5   swelling in her feet and legs.  *Id.*  She stated that because of those symptoms she could sit for

6   about an hour and stand for about forty-five minutes; had to lie down throughout the day because

7   her feet and legs swelled up when she was on them too much; and could not drive long distances.

8   *Id.*  She also testified that her daughter purchased whatever she needed at the store.  *Id.*

9        The ALJ found that Brown-Hunter had provided objective medical evidence of underlying

10  impairments that might reasonably produce the pain and other symptoms alleged, but concluded

11  that Brown-Hunter's testimony regarding the intensity, persistence, and limiting effects of her

12  symptoms was not credible.  *Id.* at *3.  The ALJ determined that Brown-Hunter had the RFC to

13  perform light work with some limitations.  *Id.*  Based upon that RFC and the testimony of a VE,

14  the ALJ concluded at step five that Brown-Hunter could perform jobs that existed in significant

15  numbers in the national economy and thus that Brown-Hunter was not disabled.  *Id.* The district

16  court affirmed the denial of benefits.  *Id.*

17        The Ninth Circuit vacated, concluding that "the ALJ committed legal error by failing to

18  specify which testimony she found not credible and why."  *Brown-Hunter*, 2015 WL 4620123, at

19  *8.  The Court determined that the case should be remanded to the district court and then to the

20  agency; the question was whether the remand to the agency should be for further proceedings or

21  for an immediate award of benefits.  *Id.* at *7-8.  The Ninth Circuit had no difficulty finding that

22  the first and third factors articulated above were satisfied, that is, that the ALJ had not provided

23  sufficient reasons for rejecting Brown-Hunter's testimony and that had the testimony been fully

24  credited the ALJ would have been required to find Brown-Hunter disabled.  *Id.* at *8.  However,

25  the Court concluded that further development of the record was necessary because inconsistencies

26  between Brown-Hunter's testimony and the medical evidence raised "crucial questions" regarding

27  her credibility.  *Id.*

28        This Court concludes that a remand for further proceedings likewise is appropriate here.

United States District Court
Northern District of California

1   As in *Brown-Hunter*, the first and third factors of the test articulated above are met with respect to

2   the ALJ's step five determination.  The ALJ failed to provide legally sufficient reasons for

3   rejecting Plaintiff's testimony and Dr. Farr's opinion (first factor), and the VE testified at the

4   administrative hearing that an individual of Plaintiff's age, education, and work experience with

5   the RFC provided by Dr. Farr could not perform past work or any competitive work (third factor).

6   The ALJ also failed to provide any reasons for his step three determination, thus depriving this

7   Court of the opportunity to conduct a meaningful review of that determination.  Given the nature

8   of the ALJ's legal errors, the Court finds that remand for further proceedings is the most

9   appropriate remedy.  Such remand will permit the ALJ to consider the medical record in light of

10  the issues highlighted by this order and further develop the record if necessary.  The Court

11  acknowledges that remand for further proceedings rather than an immediate award of benefits will

12  impose a further burden upon Plaintiff in the pursuit of benefits to which she believes she is

13  entitled.  However, "a reviewing court is not required to credit claimants' allegations regarding the

14  extent of their impairments as true merely because the ALJ made a legal error in discrediting their

15  testimony."  *Id.* at *7.  Rather, "[t]he touchstone for an award of benefits is the existence of a

16  disability, not the agency's legal error."  *Id.*  As discussed above, this Court has determined that

17  the ALJ failed to articulate proper *reasons* for his determination, but the Court has not determined

18  whether Plaintiff in fact is disabled.  The portions of the record that the Court has reviewed in

19  addressing the issues raised by the parties would appear to support a disability finding.  However,

20  the Court could not make a disability determination sufficient to support an immediate award of

21  benefits without undertaking an intensive *de novo* review of the entire and quite extensive medical

22  record in this case.  Generally, courts "leave it to the ALJ to determine credibility, resolve

23  conflicts in the testimony, and resolve ambiguities in the record."  *Id.* at *4.  The Court has every

24  confidence that upon remand the ALJ will make those determinations with the requisite specificity

25  and in accordance with the Ninth Circuit's recent guidance in *Brown-Hunter*.  Such

26  determinations may lead to a decision awarding benefits, or not.

27  //

28  //

**IV.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1)     Plaintiff's motion for summary judgment is GRANTED;

(2)     Defendant's motion for summary judgment is DENIED; and

(3)     The case is REMANDED to the Commissioner for further proceedings consistent
with this Order.

Dated:  August 14, 2015

_____
BETH LABSON FREEMAN
United States District Judge